IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JEMIMA MIDO, | * |
| Plaintiff, | * |
| | Case No. TJS-19-1037 |
| v. | * |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | * |
| | * |
| Defendant. | |
| * * * * * * | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant Washington Metropolitan Area Transit Authority's ("WMATA") Motion for Summary Judgment ("Motion") (ECF No. 25).[1] Having considered the submissions of the parties (ECF Nos. 25, 26, 27, 34, 35 & 36), I find that a hearing is unnecessary. Loc. R. 105.6. For the following reasons, the Motion will be denied.

**I.   BACKGROUND**

Plaintiff Jemima Mido ("Mido") filed a complaint against WMATA in the Circuit Court for Prince George's County, Maryland on February 21, 2019. ECF Nos. 1 at 1; 4. WMATA removed the case to this Court pursuant to the WMATA Compact, *see* Md. Code., Transp. § 10-204(81) (granting original jurisdiction over suits against WMATA to the United States District Courts), on April 5, 2019. ECF No. 1.

In the sole count of the complaint, Mido alleges that WMATA is liable for negligence. ECF No. 4. According to the complaint, Mido was a passenger on a WMATA bus on January 22, 2018. The bus driver stopped to allow passengers to disembark the bus. *Id.* ¶ 2. As Mido alighted

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF Nos. 9 & 14.

from the bus, she fell onto the pavement and sustained injuries. *Id.* ¶ 3. She alleges that she fell due to WMATA's negligence, including its failure (1) to deploy steps to allow her to safely exit the bus, (2) to lower the bus to a safe level above the ground so that she could safely alight from the bus, and (3) to warn Mido "of the substantial height difference between the vehicle's exit point and the ground." *Id.* ¶ 5. In its Motion, WMATA argues that it is entitled to summary judgment because there is no evidence that WMATA breached any duty to Mido, or that such breach caused Mido's injuries.[2] ECF No. 25 at 1.

## II.     ANALYSIS

### A.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest upon the mere allegations

---

[2] Previously, the Court ordered that it would hold WMATA's Motion under advisement so that Mido could depose the bus driver. After the bus driver was deposed, the parties filed the supplemental briefs at ECF Nos. 34 and 36.

or denials of its pleading but instead must cite to "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

Since this Court's jurisdiction is based on diversity of citizenship, the principles outlined in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require the application of state law to questions of substantive law. Maryland adheres to the *lex loci delicti* rule to determine the applicable law in tort actions. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744 (2000). Under this rule, the "substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 123 (1983). Because the alleged tort took place in Maryland, Maryland law governs Modi's negligence claim.

    **B.**     **Negligence**

In Maryland, the elements of a negligence claim are "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Chicago Title Ins. Co. v. Allfirst Bank*, 394 Md. 270, 290 (2006).

WMATA argues that it is entitled to summary judgment because there is no evidence that it breached any duty to Mido or that such a breach caused Mido's fall and the injuries she sustained. ECF No. 25-1 at 4-5. In response to Mido's argument that WMATA breached a duty to protect her by failing to deploy steps to allow her to safely exit the bus, WMATA has submitted an affidavit of Ed Russell, an employee within WMATA's bus maintenance division. ECF No. 27-1. In his

3

affidavit, Russell states that the bus involved in the incident at issue in this case "does not have steps for ingress and egress." *Id.* "Rather, it is a low floor transit bus," which allows patrons to "simply step on or off the bus." *Id.* Russell's affidavit is uncontroverted. As such, there is no genuine dispute that the bus involved in this incident was not equipped with steps that could be deployed for passengers to alight from the bus. No reasonable jury could conclude that WMATA breached any duty it owed to Mido by failing to deploy steps, as Mido claims, because the bus at issue was not equipped with such steps. But this does not end the Court's analysis.

Mido notes that WMATA's bus driver testified at her deposition that the bus she normally operates (and presumably the same type of bus involved in the incident in this case) is equipped with a "kneel" mechanism. ECF No. 34-2 at 6. This mechanism allows the bus to be lowered to assist passengers getting on and off of the bus. *Id.* The bus driver stated that passengers could request the driver to "kneel" the bus to assist them in exiting. *Id.* at 7. The bus driver explained that she would also "kneel" the bus if she observed that the bus was not low enough for a passenger to step inside the bus. *Id.* at 6. The bus driver had no independent recollection of the incident at issue in this case.

During Mido's deposition, she testified that on the date of the incident she was pregnant. ECF No. 26-3 at 3. She stated that when she boarded the bus, "the bus driver was supposed to bring down the bus level with the street" but did not do so. *Id.* Because the bus was not lowered, Mido "had to climb up the steps to the bus." *Id.* Mido went on to explain that when the bus approached her bus stop, there was some traffic congestion ahead at the next stoplight. *Id.* at 6. Because of the traffic congestion, the bus driver stopped the bus about seven or eight car lengths before the marked bus stop, in the right lane of the road. *Id.* at 6-7. It was "very dark." *Id.* at 4. Mido testified that the bus driver appeared to be in a hurry to catch the next stoplight. *Id.* at 5. The

bus driver instructed Mido and at least one other passenger to "get off the bus right there." *Id.* at 8. Mido protested, complaining to the bus driver: "you're just dropping us in the middle of the road." *Id.* The driver told Mido: "you have to get out, you have to get out now, here, at this spot." *Id.*

The place where the driver had stopped the bus for passengers to depart "was higher to the ground than in the normal bus stop." *Id.* at 12. This is because "when the bus stops . . . at the regular bus stop, it hugs the curb," ECF No. 25-2 at 14, but this time the driver stopped "in the middle of the lane where the cars were supposed to be driving," *id.* at 12. The driver did not lower (or "kneel") the bus. ECF No. 26-3 at 11. When Mido "tried to step out of the bus, [she] just tumbled over and fell down" onto the pavement. *Id.* The bus driver drove away "because the red light had just turned green . . . without paying attention to whether somebody had fallen down or not." *Id.*

"[C]ommon carriers, such as WMATA, owe an elevated duty of care to passengers." *Hall v. Wash. Metro. Area Transit Auth.*, 679 F. Supp. 2d 629, 633 (D. Md. 2010) (citing *Wash. Metro. Area Transit Auth. v. Reading*, 109 Md. App. 89, 100 (1996)); *see Todd v. Mass Transit Admin.*, 373 Md. 149, 156 (2003) (explaining that a common carrier "owes its passengers the highest degree of care to provide safe means and methods of transportation for them"). In its role as a common carrier, WMATA "owes its passengers a duty to deliver them to their destination as expeditiously as possible, consistent with safety." *Hall*, 679 F. Supp. 2d at 633 (internal quotation marks omitted). At the same time, Maryland law does not require buses to discharge passengers only at bus stops. *Reading*, 109 Md. App. at 101.

WMATA argues that because Maryland law permits the discharge of bus passengers "at any location that is not inherently or manifestly dangerous," and because "[t]here was nothing

inherently or manifestly dangerous about the location of the stop alleged by Plaintiff," it must be awarded summary judgment. ECF No. 36 at 4. It notes that there is no evidence that Mido specifically asked the bus driver to "kneel" the bus, that other patrons were able to board and depart from the bus without incident, and that the place where the bus stopped had physical characteristics similar to the marked bus stop. *Id.*

I find that a reasonable jury could conclude that WMATA was negligent. There is evidence that Mido expressed her discomfort with the place the bus had stopped to the driver, but the driver failed to either move the bus closer to the curb or "kneel" the bus lower to the ground. Mido testified that at the time of the incident it was dark. There is no evidence before the Court regarding the height of the bus's boarding platform from the ground when the "kneel" mechanism is activated and when it is not. There is also no evidence that the bus driver warned Mido of the height difference between the bus platform and the pavement. A reasonable jury could conclude that WMATA failed to exercise its elevated duty of care by discharging Mido in the middle of a travel lane, in the dark, and without kneeling the bus or warning Mido of the height difference between the bus platform and the ground, even after Mido complained about the location the bus had stopped. A reasonable jury might also conclude that, under the circumstances of this case, WMATA had a duty to discharge Mido from the bus at the curb, and not in the middle of a travel lane.

The Court has reviewed the picture that WMATA submitted (ECF No. 36-2) depicting the area where the incident occurred. The picture is somewhat grainy, but it does not appear that there are any defects in the road that would have made the location a dangerous place to discharge bus passengers. And the Court notes that Mido did not testify that there was any depression or defect in the road where the bus stopped that caused her to fall. A reasonable jury might conclude that

the bus driver did not breach any duty to Mido, and that her fall was not caused by WMATA. But it is not the Court's role to act as a factfinder, weigh the evidence, or judge the credibility of witnesses at this stage. Mido may have a weak case, but WMATA has not shown that it is entitled to judgment as a matter of law. Because there is sufficient evidence that would allow a reasonable jury to find in Mido's favor, WMATA's Motion must be denied.

### III.   CONCLUSION

For the reasons set forth above, WMATA's Motion for Summary Judgment (ECF No. 25) is **DENIED**. An accompanying Order follows.

March 10, 2021                                     /s/
Date                                              Timothy J. Sullivan
                                                  United States Magistrate Judge